IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| LPP COMBUSTION, LLC,<br><br>         Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY, GE DIGITAL, and GE GAS POWER<br><br>         Defendants. | Case No.  6:21-cv-1343<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT AGAINST GENERAL ELECTRIC COMPANY, GE DIGITAL, AND GE GAS POWER**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff LPP Combustion, LLC ("Plaintiff" or "LPP") makes the following allegations against General Electric Company ("GEC"), GE Digital LLC ("GE Digital"), and GE Gas Power International ("GE Gas Power") (collectively, "Defendant" or "GE"):

**PARTIES AND JURISDICTION**

1. LPP is a Delaware limited liability company with its principal place of business at 8940 Old Annapolis Road Suite K Columbia, Maryland 21045.

2. GEC is a New York corporation with a principal place of business at 33-41 Farnsworth Street, Boston, Massachusetts 02210. GEC may be served with process through its agent for service of process at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

3. Upon information and belief, GE Digital, a subunit corporation of GEC doing business as part of GE Corporate, is a Delaware limited liability corporation, organized and

existing under the laws of the State of Delaware, with its principal place of business at 2700 Camino Ramon, San Ramon, California 94583. GE Digital may be served with process through its agent for service of process at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. On information and belief, GE Digital has a significant place of business in this District at 400 W 15th St., Austin, TX 78701. *See* "GE Aviation Picks Austin for Tech Hub" (Ex. A) (noting GE employed 100 workers in Austin as of September 2016); "GE Aviation's Digital Group Joins GE Digital" (Ex. B) (announcing GE Aviation's Digital Group merged with GE Digital on December 1, 2020).

4. Upon information and belief, GE Gas Power, a subunit corporation of GEC doing business as part of GE Power, is a Delaware limited liability corporation, organized and existing under the laws of the State of Delaware, with its principal place of business at 4200 Wildwood Parkway Atlanta, GA 30339. GE Gas Power may be served with process through its agent for service of process at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

5. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Upon information and belief, GE Digital and GE Gas Power—both subunit corporations of GEC—operate as agents of GEC, at least with respect to the allegations set forth below.

6. This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this

District by, among other things, making, offering to sell, and selling products that infringe the asserted patents. For example, as set forth below in detail, Defendant is making, using, offering for sale, and selling the infringing product—a natural gas combustion system with ethane blending capabilities. In one publicly disclosed installation, Defendant installed an infringing system for Competitive Power Ventures' (CPV) $ 1 billion Fairview plant, which was described as "the first generation station of its size . . . to burn high contents of ethane blended into natural gas." "Competitive Power Ventures Gas Plant Uses New GE Combustion System to Cut Fuel Costs with Ethane Blend," Utility Dive (Ex. C). Defendant's infringing solution "intends to capitalize on the times when ethane is at a discount to natural gas" using a "GE vaporizer . . . [that] can turn liquid ethane from a pipeline into a gas that can be blended into natural gas to make a fuel mixture up to 25% ethane." *Id*.  CPV's CEO, Gary Lambert, identified Defendant's ethane mixing system as an economic driver behind the $1 billion plant. "It's Fair to Say – New Plant Brings Benefits to Pennsylvania," Power Engineering (Ex. D) (noting the "[d]ual ethane and natural gas capability allows for greater flexibility in the plant's fuel mix, which results in enhanced plant economics"). This ethane blending technology was implemented on GE's 7HA natural gas turbines. "Competitive Power Ventures Announces Commissioning on Ethane at Pennsylvania Power Plant" (Ex. E) ("'CPV Fairview showcases our 7HA gas turbine's leading efficiency and output for 60 Hertz applications, as well as its world-class combustion technology that allows the plant to use local ethane to provide reliable electricity,' said Tom Dreisbach, 60 Hertz Product Line Leader for GE Gas Power. 'By utilizing blends of locally sourced natural gas and ethane, CPV Fairview will be unique in the industry for efficient performance, enhanced economics, and operational flexibility.'"). On information and belief, Defendant has sold, offered to sell, made, and/or used this infringing technology in locations throughout the United States, including in the

Western District of Texas. Indeed, numerous GE natural gas turbines (similar in operation to the model installed in the CPV Fairview plant) have been implemented in this District. *See, e.g.*, "Austin Energy nears permit for 222-MW Sand Hill addition," (Ex. F) (noting Austin Energy added a "General Electric 7FA.04" natural gas turbine to its Sand Hill power plant); "Quail Run Energy Center" (Ex. G) (noting the Odessa, TX-based power plant includes four GE Frame 7EA natural gas turbines). In fact, Starwood Energy Group now owns the Quail Run Energy Center in Odessa, TX. "Starwood Energy Group Completes Acquisition of Quail Run Energy Center," (Ex. H). On information and belief, another Starwood Energy Group power plant (in Marcus Hook, PA) has implemented Defendant's infringing ethane mixing technology. Given the secrecy behind this infringing installation, Plaintiff believes Defendant has similarly sold, offered to sell, made and/or used the same technology to compatible power plants across the country, including in this District. On information and belief, GE's infringing installations implement a fuel and combustion monitoring and feedback approach similar to that described in U.S. Patent No. 7,895,821 ("the '821 Patent"), which is assigned to GEC. GE Digital—the Defendant business unit headquartered in the Western District of Texas—is responsible for developing and maintaining the monitoring and feedback software used to implement its infringing ethane mixing technology. "Competitive Power Ventures Announces Commissioning on Ethane at Pennsylvania Power Plant" (Ex. E) ("CPV Fairview's use of GE Digital's Operations Performance Management software helps its plant operations run more efficiently and increases the fuel flexibility of the plant. The software allows CPV to better manage risk by creating a digital twin of critical plant processes, using machine learning and predictive analytics to anticipate capacity requirements and support operational decisions – delivering plant operators up to 3.5% increase in capacity and 1% reduction in fuel use.").

7. Venue is proper in this District under 28 U.S.C. § 1400(b). Defendant is registered to do business in Texas, and upon information and belief, Defendant has transacted business in this District and, as described in the preceding paragraph, has committed acts of direct and indirect infringement in this District by, among other things, making, offering to sell, and selling products that infringe the asserted patents. Defendant has regular and established places of businesses in this District, including at 400 W 15th St., Austin, TX 78701.

## ALLEGATIONS COMMON TO ALL COUNTS

**A.** **LPP**

8. With the goal of substantially improving fuel flexibility for combustion systems, LPP developed a ground-breaking process that enabled any fuel or mix of fuels to be used in combustion systems that had previously been limited to lean, premixed natural gas. In 2002, advances in combustion systems for gas turbine engines resulted in substantial improvements in exhaust emissions through the use of lean, premixed natural gas. Although these turbines operating on lean, premixed fuel realized substantial emissions reduction over diffusion flame combustors, they were strictly limited to lean, premixed natural gas. Given the significant fluctuations in fuel prices and availability, there was significant industry demand to achieve such reduced emissions with alternative fuels such as higher hydrocarbon liquid fuels (e.g., oil and diesel) and fuel gasses (e.g., ethane, propane, and butane). Such flexibility would allow turbine power plants to take advantage of cheaper and more readily available fuels when the price of natural gas spikes—a common occurrence that plagues municipalities and taxpayers to this day. As illustrated below, natural gas spot prices in Texas's Henry Hub have spiked repeatedly in the last few decades, including a more than 800% increase due to cold weather in February 2021:



"Cold weather brings near record-high natural gas spot prices," U.S. Energy Information Administration, March 5, 2021 (Ex. I). Prior efforts to use such alternative fuels in a lean, premixed combustion system repeatedly failed due to a phenomenon known as auto-ignition in which these fuels ignite prematurely, decreasing efficiency and causing damage to the combustion system. LPP recognized this significant limitation of traditional lean, premixed natural gas combustion devices and proposed a novel process in which a first fuel can be vaporized into a second gas stream such that the resulting mixture avoids auto-ignition. Because the second gas stream is an inert gas (i.e., a gas that lowers the richness of the first fuel, preventing auto-ignition), any alternative fuels can be used in turbines traditionally limited to lean, premixed natural gas.

9. In 2002, LPP filed its first patent applications directed to the use of lean, premixed, prevaporized fuel in combustion systems. And, in 2004, LPP filed additional applications directed to the supporting process that monitors fuel mixtures and combustion properties of the same to ensure the fuel mixture ratio remains within the turbine's specifications. After thorough examinations, the Patent Office agreed that LPP's solutions represented pioneering inventions in this field. It granted numerous patents that cover, in various forms, systems and methods that allow

alternative fuels to be used in lean, premixed combustion devices by vaporizing those fuels into inert gas streams such that auto-ignition is suppressed. These patents include U.S. Patent No. 7,770,396 ("the '396 Patent"), U.S. Patent No. 7,934,924 ("the '924 Patent"), and U.S. Patent No. 7,435,080 ("the '080 Patent"). The '396 Patent focuses on vaporizing a first fuel into an inert second gas stream such that auto-ignition is avoided. The '924 Patent and the '080 Patent focus on the feedback system that monitors and modulates various aspects of the combustion system, ensuring the fuel mixture remains within the combustion system's specifications and making adjustments to the ratio as necessary.

10. With LPP's patented technology, municipalities and taxpayers are no longer strictly limited to lean, premixed natural gas and are not forced to bear the brunt of massive price spikes during times of significant demand. Instead, these power generating combustion systems are free to use any available alternative fuel to capitalize on lower costs while maintaining emission standards.

**B.    GE's History With LPP And The Patented Technology**

11. GE and LPP have a long history with LPP's patented technology. The first discussions date back to June 19, 2007 when the parties agreed to be bound by an initial confidentiality agreement. During those early discussions, LPP and GE discussed the patented technology at length and explored how the technology could be best exploited in the marketplace. Unbeknownst to LPP, while these conversations were taking place, GE filed its own patent application directed to mixing fuels for a natural gas turbine, monitoring fuel characteristics and combustion characteristics, and adjusting the mixture based on these measurements. Despite GE's knowledge of LPP's patent portfolio, it filed a patent application on Dec. 31, 2008 and did not disclose any of LPP's pending patent applications or the '080 Patent, which had just issued on October 14, 2008. Ultimately, GE was issued the '821 Patent without the Patent Office having

7

considered any of LPP's patented or then-patent pending technologies. On information and belief, GE incorporated information learned from LPP into the '821 Patent application. LPP intends to conduct further discovery into whether LPP should be the owner of GE's '821 Patent and, should such evidence exist, amend this Complaint accordingly.

12. The exchange of information continued over the subsequent years, and, in 2012, the parties began working on formal business plans to monetize LPP's technology. As of the summer of 2012, the parties were focused on using LPP's technology to power lean natural gas turbine power plants with a mix of ethanol with natural gas. In a summary of the parties' June 2012 meeting, the parties specifically proposed testing a blend of 25% ethanol with 75% natural gas.

13. In 2015, GE began publicly touting the benefits of using alternative fuels in natural gas turbines for power generation. For example, GE published a paper in November 2015 entitled, "Enabling Ethane as a Primary Gas Turbine Fuel: An Economic Benefit from the Growth of Shale Gas." (Ex. J). GE highlighted that "fuel price volatility ha[s] created the need for increased operational and fuel flexibility from power generating equipment." *Id*. at 3. GE noted that ethane was becoming more plentiful in the United States and prices were being driven down as production outpaced demand. *Id* at 3-4. Discussing the "economic value of alternative fuels," GE analyzed replacing 100% natural gas with a blend of 25% ethane and 75% natural gas—the same blend the parties planned to implement with LPP's patented technology years earlier. With this implementation, GE anticipated a "10-year savings of roughly $91.5 million." *Id*. at 9.

**C.     Defendant's Infringement**

14. With full knowledge of LPP's patented technology, having actively collaborated with LPP to implement the patented technology by blending alternative fuels with natural gas to drive power generation turbines, Defendant is now using LPP's patented technology to land $1

billion dollar power plant contracts. For example, on March 24, 2020, Utility Dive reported that Competitive Power Ventures' (CPV) Fairview plant is "the first generation station of its size . . . to burn high contents of ethane blended into natural gas." "Competitive Power Ventures Gas Plant Uses New GE Combustion System to Cut Fuel Costs with Ethane Blend," Utility Dive (Ex. C). The article explains that Defendant's solution "intends to capitalize on the times when ethane is at a discount to natural gas," noting that a "GE vaporizer . . . can turn liquid ethane from a pipeline into a gas that can be blended into natural gas to make a fuel mixture up to 25% ethane." *Id*. CPV's CEO, Gary Lambert, identified Defendant's ethane mixing system as an economic driver behind the $1 billion plant. "It's Fair to Say – New Plant Brings Benefits to Pennsylvania," Power Engineering (Ex. D) (noting the "[d]ual ethane and natural gas capability allows for greater flexibility in the plant's fuel mix, which results in enhanced plant economics").

15. As set forth in the below allegations and the attached infringement charts in support, Defendant's ethane mixing implementation infringes LPP's '396 Patent, '924 Patent, and '080 Patent. On information and belief, Defendant has sold, offered to sell, made, and/or used this same infringing technology in locations throughout the United States, including in the Western District of Texas.

16. On information and belief, Defendant's infringing installations implement the fuel and combustion monitoring and feedback approach described in its '821 Patent. GE Digital—the Defendant business unit headquartered in the Western District of Texas—is responsible for developing and maintaining the monitoring and feedback software that Defendant uses to implement its infringing ethane mixing technology. "Competitive Power Ventures Announces Commissioning on Ethane at Pennsylvania Power Plant" (Ex. XX) ("CPV Fairview's use of GE Digital's Operations Performance Management software helps its plant operations run more

9

efficiently and increases the fuel flexibility of the plant. The software allows CPV to better manage risk by creating a digital twin of critical plant processes, using machine learning and predictive analytics to anticipate capacity requirements and support operational decisions – delivering plant operators up to 3.5% increase in capacity and 1% reduction in fuel use.").

## COUNT I
## (INFRINGEMENT OF U.S. PATENT NO. 7,770,396)

17. LPP incorporates by reference paragraphs 1 through 16 herein.

18. LPP is the owner by assignment of United States Patent No. 7,770,396, entitled "System For Vaporization of Liquid Fuels For Combustion and Method of Use" ("the '396 Patent"), with ownership of all substantial rights therein, including the right to exclude others and to sue and recover damages for the past and future infringement thereof. A true and correct copy of the '396 Patent is attached as Ex. K. The '396 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

19. The '396 Patent claims, among other things, a system and method for operating a combustion device that produces a fuel gas by blending a liquid fuel with a second, diluent gas in a manner that suppresses a reaction of the fuel gas upstream of the combustion zone. On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports components and control software that enable mixing up to 25% ethane with natural gas for combustion in a natural gas turbine ("Accused System") that directly infringes, literally and/or under the doctrine of equivalents, at least Claims 1 and 10 of the '396 Patent.

20. Attached as Ex. L is a claim chart detailing, in an exemplary manner, how the Accused System infringes at least Claims 1 and 10 of the '396 Patent. The allegations set forth in Ex. L are incorporated herein by reference.

21. Defendant also knowingly and intentionally induces infringement of at least claims 1 and 10 of the '396 Patent in violation of 35 U.S.C. § 271(b). As set forth above in paragraphs 11-13, Defendant has extensive knowledge of Plaintiff's patent portfolio, having entered into three separate confidentiality agreements and collaborated on numerous plans to implement Plaintiff's patented technology. Accordingly, Defendant had specific knowledge of the '396 Patent and knew or should have known that the Accused System infringed. Despite this knowledge, Defendant continues to actively encourage and instruct its customers to use the Accused System in ways that directly infringe the '396 Patent. Defendant did so knowing and intending that its customers will commit these infringing acts. Defendant also continues to make, use, offer for sale, and/or sell the Accused System, despite knowledge of the '396 Patent, thereby specifically intending for and inducing customers to infringe the '396 Patent through the customers' normal and customary use of the Accused System.

22. Defendant has also infringed, and continues to infringe, at least Claims 1 and 10 of the '396 Patent by selling or offering for sale the Accused System, knowing that the Accused System constitutes a material part of the inventions claimed in the '396 Patent, is especially made or adapted to infringe the '396 Patent, and is not a staple article or commodity of commerce suitable for non-infringing use. Defendant has been, and currently is, contributorily infringing the '396 Patent in violation of 35 U.S.C. §§ 271(c) and (f).

23. By making, using, offering for sale, and/or selling the Accused System, Defendant has injured Plaintiff and is liable for infringement of the '396 Patent pursuant to 35 U.S.C. § 271. Plaintiff has been harmed by this infringement and is entitled to compensation in an amount no less than a reasonable royalty as well as its lost profits for Defendant's infringement.

24. Defendant also had knowledge of or has been willfully blind to its infringement of the '396 Patent, and based on that knowledge or willful blindness, has willfully infringed the '396 Patent.

**COUNT II**
**(INFRINGEMENT OF U.S. PATENT NO. 7,934,924)**

25. LPP incorporates by reference paragraphs 1 through 16 herein.

26. LPP is the owner by assignment of United States Patent No. 7,934,924, entitled "System and Method for Flame Stabilization and Control" ("the '924 Patent"), with ownership of all substantial rights therein, including the right to exclude others and to sue and recover damages for the past and future infringement thereof. A true and correct copy of the '924 Patent is attached as Ex. M. The '924 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

27. The '924 Patent claims, among other things, a system and method for monitoring combustion characteristics of a combustion system and adjusting fuel feed characteristics based on acceptable ranges. On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports components and control software that enable mixing up to 25% ethane with natural gas for combustion in a natural gas turbine ("Accused System") that directly infringes, literally and/or under the doctrine of equivalents, at least Claims 1 and 16 of the '924 Patent.

28. Attached as Ex. N is a claim chart detailing, in an exemplary manner, how the Accused System infringes at least Claims 1 and 16 of the '924 Patent. The allegations set forth in Ex. N are incorporated herein by reference.

29. Defendant also knowingly and intentionally induces infringement of at least claims 1 and 16 of the '924 Patent in violation of 35 U.S.C. § 271(b). As set forth above in paragraphs 11-13, Defendant has extensive knowledge of Plaintiff's patent portfolio, having entered into three

separate confidentiality agreements and collaborated on numerous plans to implement Plaintiff's patented technology. Accordingly, Defendant had specific knowledge of the '924 Patent and knew or should have known that the Accused System infringed. Despite this knowledge, Defendant continues to actively encourage and instruct its customers to use the Accused System in ways that directly infringe the '924 Patent. Defendant did so knowing and intending that its customers will commit these infringing acts. Defendant also continues to make, use, offer for sale, and/or sell the Accused System, despite knowledge of the '924 Patent, thereby specifically intending for and inducing customers to infringe the '924 Patent through the customers' normal and customary use of the Accused System.

30. Defendant has also infringed, and continues to infringe, at least Claims 1 and 16 of the '924 Patent by selling or offering for sale the Accused System, knowing that the Accused System constitutes a material part of the inventions claimed in the '924 Patent, is especially made or adapted to infringe the '924 Patent, and is not a staple article or commodity of commerce suitable for non-infringing use. Defendant has been, and currently are, contributorily infringing the '924 Patent in violation of 35 U.S.C. §§ 271(c) and (f).

31. By making, using, offering for sale, and/or selling the Accused System, Defendant has injured Plaintiff and is liable for infringement of the '924 Patent pursuant to 35 U.S.C. § 271. Plaintiff has been harmed by this infringement and is entitled to compensation in an amount no less than a reasonable royalty as well as its lost profits for Defendant's infringement.

32. Defendant also had knowledge of or has been willfully blind to its infringement of the '924 Patent, and based on that knowledge or willful blindness, has willfully infringed the '924 Patent.

## COUNT III
## (INFRINGEMENT OF U.S. PATENT NO. 7,435,080)

33. LPP incorporates by reference paragraphs 1 through 16 herein.

34. LPP is the owner by assignment of United States Patent No. 7,435,080 entitled "System For Vaporization of Liquid Fuels For Combustion and Method of Use" ("the '080 Patent"), with ownership of all substantial rights therein, including the right to exclude others and to sue and recover damages for the past and future infringement thereof. A true and correct copy of the '080 Patent is attached as Ex. O. The '080 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

35. The '080 Patent claims, among other things, a system and method for monitoring fuel characteristics of a combustion system and adjusting fuel feed characteristics based on acceptable ranges. On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports components and control software that enable mixing up to 25% ethane with natural gas for combustion in a natural gas turbine ("Accused System") that directly infringes, literally and/or under the doctrine of equivalents, at least Claims 1 and 20 of the '080 Patent.

36. Attached as Ex. P is a claim chart detailing, in an exemplary manner, how the Accused System infringes at least Claims 1 and 20 of the '080 Patent. The allegations set forth in Ex. P are incorporated herein by reference.

37. Defendant also knowingly and intentionally induces infringement of at least Claims 1 and 20 of the '080 Patent in violation of 35 U.S.C. § 271(b). As set forth above in paragraphs 11-13, Defendant has extensive knowledge of Plaintiff's patent portfolio, having entered into three separate confidentiality agreements and collaborated on numerous plans to implement Plaintiff's patented technology. Accordingly, Defendant had specific knowledge of the '080 Patent and knew or should have known that the Accused System infringed. Despite this knowledge, Defendant

continues to actively encourage and instruct its customers to use the Accused System in ways that directly infringe the '080 Patent. Defendant did so knowing and intending that its customers will commit these infringing acts. Defendant also continues to make, use, offer for sale, and/or sell the Accused System, despite knowledge of the '080 Patent, thereby specifically intending for and inducing customers to infringe the '080 Patent through the customers' normal and customary use of the Accused System.

38. Defendant has also infringed, and continues to infringe, at least Claims 1 and 20 of the '080 Patent by selling or offering for sale the Accused System, knowing that the Accused System constitutes a material part of the inventions claimed in the '080 Patent, is especially made or adapted to infringe the '080 Patent, and is not a staple article or commodity of commerce suitable for non-infringing use. Defendant has been, and currently are, contributorily infringing the '080 Patent in violation of 35 U.S.C. §§ 271(c) and (f).

39. By making, using, offering for sale, and/or selling the Accused System, Defendant has injured Plaintiff and is liable for infringement of the '080 Patent pursuant to 35 U.S.C. § 271. Plaintiff has been harmed by this infringement and is entitled to compensation in an amount no less than a reasonable royalty as well as its lost profits for Defendants' infringement.

40. Defendant also had knowledge of or has been willfully blind to its infringement of the '080 Patent, and based on that knowledge or willful blindness, has willfully infringed the '080 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter:

A. Judgment in favor of Plaintiff that Defendant has infringed the '396 Patent, the '924 Patent, and the '080 Patent;

B. A permanent injunction enjoining Defendant, its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or privity therewith from direct and/or indirect infringement of the '396 Patent, the '924 Patent, and the '080 Patent;

C. A judgment and order requiring Defendant to pay Plaintiff its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the '396 Patent, the '924 Patent, and the '080 Patent;

D. A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

E. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant;

F. An award of enhanced damages to Plaintiff as a result of Defendant's willful infringement; and

G. Such other relief as this Court or a jury may deem proper and just under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  December 22, 2021   Respectfully submitted,
ERISE IP, P.A.

*/s/ Melissa R. Smith*
Paul R. Hart (CO Bar 45697)
Erise IP, P.A.
5299 DTC Blvd., Suite 1340
Greenwood Village, CO 80111
(913) 777-5600 telephone
(913) 777-5601 fax

16

Paul.Hart@eriseIP.com

Adam P. Seitz (KS Bar 21059)
Erise IP, P.A.
7015 College Blvd., Suite 700
Overland Park, KS 66211
(913) 777-5600 telephone
(913) 777-5601 fax
Adam.Seitz@eriseIP.com

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
Email: melissa@gillamsmithlaw.com

ATTORNEYS FOR PLAINTIFF LPP COMBUSTION, INC.

17