**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

LPP COMBUSTION, LLC

                Plaintiff,

   v.

GENERAL ELECTRIC COMPANY, GE
DIGITAL LLC, and GE GAS POWER,

                Defendants.

Case No. 6:21-CV-01343-ADA
JURY TRIAL DEMANDED

**DEFENDANTS' MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM AND IMPROPER VENUE**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND .............................................................................3

        A.      LPP Identifies No Defendant that Operates in This District....................3

        B.      The Asserted Patents...............................................................................5

        C.      LPP's Infringement Allegations. .............................................................7

III.    Legal Standards..................................................................................................8

        A.      Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). .........................8

        B.      Improper Venue under Fed. R. Civ. P. 12(b)(3). .....................................9

IV.     ARGUMENT .....................................................................................................11

        A.      LPP Fails to State a Claim of Infringement against Any Defendant
                Because It Fails to Identify Any Accused Product. ................................11

                1.      LPP's failure to identify an accused product requires dismissal. ..............11

        B.      LPP's Allegations of Direct Infringement Based on the '821 Patent Are
                Inconsistent with the Claims of the Asserted Patents. ...........................12

                1.      The '396 Patent. ...........................................................13

                2.      The '924 and '080 Patents. ..........................................14

        C.      LPP's Allegations of Indirect Infringement Fail Because Its Direct
                Infringement Claims Fail. ......................................................................15

        D.      Venue Is Improper for All Defendants in This District under 28 U.S.C.
                § 1406(a). ..............................................................................................16

                1.      LPP's Infringement Allegations Cannot Establish that Any
                        Defendant Has Committed an Act of Infringement in This District.........17

                2.      LPP Has Not Shown that Any Defendant Maintains a Regular and
                        Established Place of Business in This District.............................17

                        a.      No Defendant Has a Physical and Regular and Established
                                Place of Business Within This District. ...................... 18

i

### TABLE OF CONTENTS
(*continued*)

**Page**

        b.    Defendants' Employees Who Reside in the District Do Not Establish Venue. .......................................................................... 18

V.    CONCLUSION....................................................................................................20

# TABLE OF CITATIONS

<u>**Page(s)**</u>

**Cases**

*AGIS Software Dev., LLC v. ZTE Corp.*,
2018 WL 4854023 (E.D. Tex. Sept. 28, 2018) ........................................................10, 16, 17

*Andra Group, LP v. Victoria's Secret Stores, L.L.C.*,
6 F.4th 1283 (Fed. Cir. 2021) .................................................................................................18

*Artrip v. Ball Corp.*,
735 F. App'x 708 (Fed. Cir. 2018) .....................................................................................8, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................8, 11

*Bot M8 LLC v. Sony Corp. of America*,
4 F.4th 1342 (Fed. Cir. 2021) ............................................................................................9, 13

*Celgard v. Shenzhen Senior Tech. Material Co. Ltd. (US) Research Institute*,
2020 WL 7392909 (N.D. Cal. July 23, 2020)....................................................................9, 11

*Celgene Corp. v. Mylan Pharm. Inc.*,
17 F.4th 1111 (Fed. Cir. 2021) .......................................................................................18, 19

*Commill USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015).................................................................................................................15

*Correct Transmission LLC v. ADTRAN, Inc.*,
2021 WL 1967985 (W.D. Tex. May 17, 2021) ......................................................................19

*CPC Patent Techs. Pty Ltd. v. Apple Inc.*,
2022 WL 118955 (W.D. Tex. Jan. 12, 2022) .........................................................................15

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)..............................................................................10, 18, 19, 21

*Cross Med. Prods. Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005)..............................................................................................15

*Cross v. Dick's Sporting Goods, Inc.*,
2022 WL 138038 (N.D. Ind. Jan. 14, 2022) .........................................................................11

# TABLE OF CITATIONS
*(continued)*

**Page(s)**

*CUPP Cybersecurity LLC v. Symantec Corp.*,
2019 WL 1070869 (N.D. Tex. Jan. 16, 2019) ........................................................................20

*Demodulation, Inc. v. United States*,
126 Fed. Cl. 499 (2016) .........................................................................................................12

*Estech Sys., Inc. v. Regions Fin. Corp.*,
2020 WL 6324321 (W.D. Tex. Oct. 28, 2020) ...................................................................8, 11

*Fifth Marker, Inc. v. CME Group, Inc.*,
2009 WL 5966836 (D. Del. May 14, 2009).........................................................................8, 11

*Gesture Tech. Partners, LLC v. Lenovo Group Ltd.*,
2021 WL 6205789 (W.D. Tex. Dec. 29, 2021) ......................................................................19

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) ...............................................................................................................15

*GreatGigz Solutions, LLC v. ZipRecruiter, Inc.*,
2022 WL 432558 (W.D. Tex. Feb. 11, 2022) ....................................................................18, 19

*Iron Oak Techs., LLC v. Dell, Inc.*,
2018 WL 1631396 (W.D. Tex. Apr. 4, 2018).........................................................................16

*Joao Bock Transaction Sys. of Texas, LLC v. Am. Nat. Bank of Texas*,
2010 WL 9098786 (E.D. Tex. Mar. 29, 2010) .........................................................................9

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)...............................................................................................16

*Linear Tech. Corp. v. Impala Linear Corp.*,
379 F.3d (Fed. Cir. 2004).........................................................................................................15

*Macom Tech. Solutions Holdings, Inc. v. Infineon Techs. AG*,
2017 WL 3449596 (C.D. Cal. June 5, 2017) ..........................................................................12

*Realtime Data LLC v. Stanley*,
721 F. Supp. 2d 538 (E.D. Tex. 2010) ......................................................................................8

*Sudenga Indus., Inc. v. Global Indus., Inc.*,
2018 WL 9811114 (N.D. Iowa Sept. 14, 2018).......................................................................17

*Superior Indus., L.L.C. v. Thor Glob. Enterprises Ltd.*,
2011 WL 601217 (D. Minn. Feb. 11, 2011) ...........................................................................12

# TABLE OF CITATIONS
(*continued*)

**Page(s)**

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
 137 S. Ct. 1514 (2017)....................................................................................................10

*Uniloc USA, Inc. v. Nutanix, Inc.*,
 2017 WL 11527109 (E.D. Tex. Dec. 6, 2017)....................................................................19

*Vervain v. Micron Techs., Inc.*,
 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ...................................................................13, 14

*In re ZTE (USA) Inc.*,
 890 F.3d 1008 (Fed. Cir. 2018)....................................................................................10, 16

**Statutes**

28 U.S.C. § 1400(b) ..........................................................................................................10

28 U.S.C. § 1406(a) ..........................................................................................................11

35 U.S.C. § 271(a) ..............................................................................................................9

**Other Authorities**

https://www.dnb.com/business-directory/company-profiles.ge_flight_efficiency_
 services_incorporated.2759a2320f4aa643c4101c8fa5054d5e.html ..........................................5

**Rules**

Fed. R. Civ. P. 12(b)(3)......................................................................................................11

## I.   INTRODUCTION

Power plants have a long history of using combustion turbines to generate electricity.  The General Electric Company contributed significantly to that history: in 1949, a GE business unit installed the first gas turbine used to generate electricity in the United States.  Since that first turbine over seventy years ago, General Electric, through its business divisions and subsidiaries, invested and innovated in technology used by power plants around the world.  Plaintiff LPP Combustion, LLC ("LPP") played no part in that success, and the patents LPP asserts in this case that relate to fuels used, and the monitoring of fuel mixes, in gas turbines for power generation have no relevance to GE's innovation and technology.

Contrary to what LPP alleges in its Complaint, LPP and Defendants do not have "a long history."  Compl., ¶ 11.  Rather, LPP had a brief history with a GE entity that ended long ago.  Over the decade or more since that "history" ended, LPP's business wilted.  Thus, lacking revenue-generating opportunities from its own products, LPP turned to this lawsuit where it hopes to exploit GE's success.  But what LPP may have invented is not what GE does.  Indeed, as explained below, in its Complaint, LPP cannot even identify a specific product that allegedly infringes the three asserted patents, much less identify any allegedly infringing act performed by any defendant.

So, starting with *what* allegedly infringes, in its Complaint, LPP defines the "Accused System" generally as "components and control software that enable mixing up to 25% ethane with natural gas for combustion in a natural gas turbine."  Compl., ¶¶ 19, 27, and 35.  That is as far as LPP goes.  LPP identifies no actual "component" or "control software" that controls the unnamed component.  In short, LPP has failed to identify *what* infringes.

With no product to accuse, LPP stumbles over *who* allegedly infringes.  LPP names, as defendants, three entities—General Electric Company, GE Digital and GE Gas Power—and identifies each as a separate corporate entity: GE Company as a New York corporation (Compl., ¶

2), GE Digital as a Delaware limited liability corporation (Compl., ¶ 3), and GE Gas Power as a business unit of GE Power, which is a Delaware limited liability corporation (Compl., ¶ 4). Nowhere, however, does LPP link any one of these defendants to a product that allegedly infringes the asserted patents or specify each defendant's role with respect to the manufacture, use, or sale of any such accused product.  With no accused product and no identified act linked to each (or any) defendant, LPP fails to provide notice of *why* each is named.  This flaw is fatal.

Unable to identify what and who allegedly infringe, the "best" LPP can do to "support" its claim of infringement is identify a patent issued to General Electric Company *in 2011*—U.S. Patent No. 7,895,821 ("the '821 patent").  But nowhere in the Complaint, or claim charts, does LPP allege that GE (or any entity for that matter) actually practices the '821 patent—whether by manufacturing a product that practices the '821 patent, representing that any products practice the '821 patent, or formally marking any products pursuant to 35 U.S.C. § 287, or otherwise.  Without more, an alleged defendant's mere ownership of a patent does not support a plausible claim of infringement.  Not only that, rather than demonstrate a plausible cause of action, LPP's claim charts using the '821 patent, show the implausibility of the action.  Indeed, the claim charts reveal that GE's '821 patent is *inconsistent* with the asserted patent claims.  These inconsistencies demonstrate the implausibility of LPP's infringement allegations and support dismissal of the Complaint.

Finally, LPP fails to establish that this District is a proper venue, *i.e.*, *where* this suit properly belongs.  As this Court knows well, when a plaintiff files an action outside the judicial district in which the defendant resides (as LPP has done here), venue is only proper where the defendant has committed acts of infringement and has a regular and established place of business." Because the Complaint lacks a specific allegation of what infringes and who infringes, LPP fails

to identify an alleged act of infringement in this District.  Moreover, LPP must prove venue *for each defendant*—including that *each defendant* has an established place of business in this District.  LPP's Complaint identifies a single address in Austin that LPP ascribes to defendant GE Digital, and makes no effort at all to connect the other defendants—General Electric Company and GE Gas Power—to an address in the District.  At bottom, LPP fails to plead that *any* of the defendants has an established place of business in the district *and* committed alleged acts of infringement in this district; accordingly, this case must be dismissed for improper venue.

Lacking proper venue, lacking an explanation of why any one defendant infringes, and lacking an actual accused product, the Court must dismiss this case—pursuant to 28 U.S.C § 1406 and Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6).  Transfer is not an option; LPP has not identified any *one* court in which venue would be proper for each defendant, *i.e.*, one court in which it originally could have brought this case.  Respectfully, dismissal is the only option.

## II.    FACTUAL BACKGROUND

### A.    LPP Identifies No Defendant that Operates in This District.

Despite pleading that each named defendant is a separately organized entity, LPP treats the defendants as a single entity, defining them as "GE" or "Defendant."  Compl., ¶ 1.  Defendants address LPP's allegations as presented, although they note for the Court that the identified Defendant GE Gas Power is a non-operating entity.  *See infra* at 5.

Incorporated in 1892, the General Electric Company ("GE") traces its roots back to Thomas Edison.  Through its various business divisions, GE operates in diverse segments, including aeronautics, medical and power generation.  Decl. of Constance Rodts on Behalf of General Electric Company in Supp. of Defs.' Mot. to Dismiss ("Rodts Decl.") at ¶ 2.  As LPP's Complaint acknowledges, GE is a New York corporation, with its principal place of business in Boston, Massachusetts.  Compl., ¶ 2.  GE has no offices in the Western District of Texas.  *Id.*

In the United States, the design, manufacture and overall business of gas turbines for power generation, including the 7HA, 7FA.04, and 7EA turbines referenced in the Complaint, occurs in Atlanta, Georgia, Greenville, South Carolina and Schenectady, New York. *Id.* ¶ 5. All three of the specific gas turbine sales mentioned in the background of the Complaint—the 7HA gas turbines in Fairview, Pennsylvania, the 7FA.04 gas turbine in Austin, Texas owned by Austin Energy, and the 7EA gas turbines in Odessa, Texas owned by Starwood Energy Group—were managed out of Schenectady, New York. *Id.* ¶¶ 6-8. The 7FA gas turbine sold to Austin Energy was shipped in 2002. *Id.* ¶ 7. The 7EA gas turbines owned by Starwood Energy Group were shipped in 2001 and 2002. *Id.* ¶ 8.

GE's '821 patent originated from work out of Georgia, New York, and South Carolina, as shown on the cover of the patent. *Id.* at Ex. 1. The New York and South Carolina inventors continue to work in those respective locations. *Id.* ¶¶ 13-15. Only Mr. Annigeri (the Georgia inventor) has changed employment. *Id.* ¶ 16. According to LinkedIn, he now works for EthosEnergy, but is still in Roswell, Georgia. *Id.* at Ex. 2.

LPP identifies Defendant GE Digital as a Delaware limited liability corporation, with its principal place of business in San Ramon, California. Compl., ¶ 3. GE Digital develops and licenses software called Operations Performance Management ("OPM"), referenced in the Complaint, which is used to improve the performance of plants, sites, and generation portfolios by analyzing historical and operational data. Decl. of Robert Morimoto on Behalf of GE Digital LLC in Supp. of Defs.' Mot. to Dismiss ("Morimoto Decl.") at ¶ 3. OPM was developed primarily by personnel located in India and California. *Id.* ¶ 4. Personnel responsible for managing the licensing and marketing of OPM are primarily located in California and Georgia. *Id.* None of the GE Digital personnel involved in the development, licensing, and marketing of OPM are located

in the Western District of Texas.  *Id.*  None of the employees who work out of the Austin office are or have ever been involved in the development, licensing, and/or marketing of OPM.  *Id.* ¶ 7.

GE Digital is not affiliated with the Austin address identified in the Complaint (¶ 3).  *Id.* ¶ 5.  However, in November 2021, GE Digital acquired the assets and business of GE Flight Efficiency Services ("FES")—a separately incorporated entity focused on providing solutions to aviation operators.  *Id.* ¶ 6.  Although GE Digital leased a building at 10801-2 N. MoPac Expressway, Suite 140, Austin, TX 78759 for the new Aviation Digital business, neither the business formerly conducted by FES nor the current Aviation Digital segment of GE Digital has anything to do with the manufacture and sale of gas turbines for power generation or OPM.  *Id.*  Thus, contrary to LPP's allegation (Compl., ¶ 16), none of the employees who work out of GE Digital's Austin office are or have ever been "responsible for developing and maintaining the monitoring and feedback software" related to the mixing of ethane.  Morimoto Decl. ¶ 7.  Nothing in any of the exhibits LPP includes with the Complaint implies such.

LPP identifies Defendant GE Gas Power as a Delaware limited liability corporation.  Compl., ¶ 4.  This is not an operating entity and, as such, has no offices in the Western District of Texas or elsewhere.  Rodts Decl. ¶ 4.

According to the Complaint, LPP is a Delaware limited liability company with its principal place of business in Columbia, Maryland.  Compl., ¶ 1.  LPP does not allege that it is registered to do business or has ever done business in Texas.

B.     **The Asserted Patents.**

LPP asserts three patents in this case:  U.S. Patent No. 7,770,396 ("the '396 patent"), U.S. Patent No. 7, 435,080 ("the '080 patent"), and U.S. Patent No. 7,934,924 ("the '924 patent").  Generally, the '396 patent concerns methods and apparatuses for using liquid fuels in combustion devices using an "inert diluent gas" to vaporize the liquid fuel.  According to the patent, by mixing

the fuel with an inert gas, "reaction of the vaporized fuel can be prevented or sufficiently delayed so as to avoid auto-ignition."  Dkt. 1-11 ("'396 patent"), 3:6-13.  The patent further explains "[b]ecause vaporized fuel requires a sufficient presence of oxygen in order to combust, by mixing the vaporized fuel with an oxygen-reduced stream, such as an appropriate level of non-combustible nitrogen combined with a reduced level of oxygen, combustion of the vaporized fuel can be prevented or sufficiently delayed so as to avoid auto-ignition."  *Id.* 3:58-64.  Both independent claims of the '396 patent thus require mixing liquid fuel that includes hydrocarbon molecules and an inert diluent gas, wherein the inert diluent gas is present in such an amount that reaction of the fuel gas is suppressed.  *See* '396 patent, claims 1 and 10.

The '924 patent is a division of and shares the same specification with the '080 patent. Generally, these patents are focused on systems and methods for computerized control of combustion by addition of a combustion enhancer or combustion retardant based on sensed characteristics of the combustion.  The patents explain, for example, that combustion device performance is controlled via monitoring of fuel characteristics and the addition of one or more additives to the fuel feed as necessary.  *See, e.g.,* Dkt. 1-13 ("'924 patent"), 2:3-10.  The patents continue that the monitored results are compared to an acceptable range of characteristics and if the monitored results are outside the acceptable range, an appropriate amount of a fuel additive is added to the fuel feed.  *Id.* at 2:11-18.  If the flame speed is too slow, a combustion enhancer is added to the fuel feed; on the other hand, if the flame speed is too fast, a combustion retardant is added to the feed.  *Id.* at 2:19-30.  Thus, each of the independent claims of both the '924 patent and the '080 patent requires a sensor (or sensing), a fuel or combustion characteristic and an additive that includes a combustion enhancer or a combustion retardant.  *See* '924 patent, claims 1 and 16; Dkt. 1-15 ("'080 patent"), claims 1, 19, 20 and 22.

**C.      LPP's Infringement Allegations.**

The Complaint includes three counts—Count I for infringement of the '396 patent, Count II for infringement of the '924 patent, and Count III for '080 patent.  The infringement allegations, which are largely identical, plead that the "Defendant" makes, uses, or sells an "Accused System"—defined generically as "components and control software that enable the mixing up of 25% ethane with natural gas for combustion in a natural gas turbine."  Compl., ¶¶ 19, 27, 35.  But in neither the body of the Complaint nor the claim charts appended to the Complaint does LPP identify a "component" or "control software" that allegedly infringes.

Instead, the claim charts compare claims of the asserted patents to GE's '821 patent.  Compl., ¶¶ 6, 16, 20 (Ex. L), 28 (Ex. N), 36 (Ex. P).  LPP, however, does not and cannot allege that any one of the defendants, much less all of the defendants, actually makes, offers or sells a product covered by the '821 patent; there is no such product.  Rodts Decl. ¶ 17; Morimoto Decl. ¶ 9.

The only place that the Complaint identifies specific products is the background section—which contains a handful of vague references to GE's 7HA, 7FA.04, and 7EA gas turbines.  But LPP makes no attempt to show that any of the identified turbines meets any limitation of any claim of the asserted patents.  With respect to the 7FA.04 and 7EA gas turbines identified in Austin and Odessa (Compl., ¶ 6), for example, those gas turbines were ***sold and shipped*** by 2002—before the asserted patents were filed.  Rodts Decl. ¶¶ 7-8.  Even if any of these gas turbines practice of the claims the asserted patents (they do not), they would constitute prior art that ***invalidates the asserted patents***.  In any event, LPP fails to meet its pleading obligations under Rule 8, only generically stating that "Defendant installed an infringing system" (Compl. ¶ 6) and "Defendant has sold, [and] offered to sell" the 7HA, 7FA.04, and 7EA gas turbines (*id.*) without alleging: (1) whether or how each such turbine infringes LPP's patents, or (2) which defendant infringes.

Similarly, the Complaint obliquely references "GE Digital's Operations Performance Management software" (*id.*), but fails to equate that software with the "control software" that defines the "Accused System," much less allege that OPM software infringes the asserted patents. As the exhibits to the Complaint explain, the software "helps ***plant*** operations run more efficiently," not the control of so-called "combustion devices." *See, e.g., id.*; Compl., Ex. E; Morimoto Decl. ¶ 3. LPP's claim charts, moreover, do not once mention the OPM software. *See, e.g.,* Dkts. 1-11, 1-13, 1-15 (asserted patents).

### III.   LEGAL STANDARDS

### A.   Failure to State a Claim under Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege non-conclusory facts that make liability "plausible," meaning that they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 556 (2007)). For a claim of direct patent infringement, the complaint must—at a minimum—identify the accused products and plead facts that describe how those products infringe. *See Artrip v. Ball Corp.*, 735 F. App'x 708, 715 (Fed. Cir. 2018) (affirming dismissal where complaint did not identify by name "any of the particular machines that allegedly infringe other than by broad functional language"); *Estech Sys., Inc. v. Regions Fin. Corp.*, 2020 WL 6324321, at *2 (W.D. Tex. Oct. 28, 2020) ("a patent infringement Plaintiff [must] identify an accused product by name in most cases such that the Defendant is on notice of what specific conduct is alleged to constitute infringement"); *Fifth Marker, Inc. v. CME Group, Inc.*, 2009 WL 5966836, at *1 (D. Del. May 14, 2009). "[V]ague reference" to a category of products is insufficient to meet the pleading requirements, particularly when "asserting [numerous] patents with a multitude of claims." *Realtime Data LLC v. Stanley*, 721 F. Supp. 2d 538, 543 (E.D. Tex. 2010); *Celgard v. Shenzhen Senior Tech. Material Co. Ltd.*

*(US) Research Institute,* 2020 WL 7392909, *3 (N.D. Cal. July 23, 2020) (dismissing complaint where plaintiff had merely identified categories of products that allegedly infringed without identifying any product by name).

Moreover, an alleged infringer can only be liable for direct infringement if it "makes, uses, offers to sell, or sells" the allegedly infringing product.  *See* 35 U.S.C. § 271(a).  Hence, a complaint must identify the alleged infringing acts performed by each defendant, so as to inform each of the defendant "as to what [it] must defend."  *Joao Bock Transaction Sys. of Texas, LLC v. Am. Nat. Bank of Texas*, No. 6:09CV368, 2010 WL 9098786, at *3 (E.D. Tex. Mar. 29, 2010).

Recently, in *Bot M8 LLC v. Sony Corp. of America,* 4 F.4th 1342 (Fed. Cir. 2021), the Federal Circuit reiterated that the relevant inquiry "is whether the factual allegations in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."  *Id.* at 1352. The court explained that "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device."  *Id.* at 1353.  The court, moreover, held that although a patentee need not prove its case at the pleading stage, "a patentee may subject its claims to early dismissal by pleading facts that are ***inconsistent*** with the requirements of its claims."  *Id.* at 1346 (emphasis added).  The court therefore dismissed two of the asserted patents—one on the grounds that the patentee had included factual allegations in its complaint that were inconsistent with the language of the patent claims, and one on the grounds that the patentee failed to track the claim language to the specific components of the accused device.  As explained below, LPP's Complaint suffers from the same fatal flaws.

**B.    Improper Venue under Fed. R. Civ. P. 12(b)(3).**

Venue for a domestic corporation accused of patent infringement is proper only where the defendant either (1) is incorporated, or (2) commits acts of infringement and has a regular and

established place of business.  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1514 (2017); 28 U.S.C. § 1400(b).  When evaluating whether a corporation has a regular and established place of business, the Federal Circuit has enumerated a three-part test: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant.  *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  Courts consider a number of non-exclusive factors when determining whether a defendant has ratified a place of business such that it must be considered a "place of the defendant."  These include (1) whether the defendant owns or leases the place, or exercises other attributes of possession of the place, (2) whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place, (3) whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself, and (4) the nature and activity of the alleged place of business of the defendant in the district in comparison with that of other places of business of the defendant in other venues.  *Id.* at 1363-65.

The plaintiff, upon a motion by defendant challenging venue, bears the burden to establish that venue is proper as to ***each*** defendant.  *See In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018); *AGIS Software Dev., LLC v. ZTE Corp.*, 2018 WL 4854023, *4 (E.D. Tex. Sept. 28, 2018).  Importantly, under 28 U.S.C. § 1406(a), if venue is improper, the Court must dismiss the case unless transfer to a district in which it could have been brought would "be in the interest of justice."  28 U.S.C. § 1406(a); Fed. R. Civ. P. 12(b)(3).  Here, as detailed below, LPP cannot identify any one district in which the case could have been brought.

## IV.    ARGUMENT

**A.    LPP Fails to State a Claim of Infringement against Any Defendant Because It Fails to Identify Any Accused Product.**

### 1.    LPP's failure to identify an accused product requires dismissal.

LPP has failed to plead facts—any facts—that support a reasonable inference that any one defendant is liable for infringement of the asserted patents.  LPP identifies ***no*** accused product, but instead defines the "Accused Systems" generically as "components and control software that enable mixing of up to 25% ethane with natural gas for combustion in a natural gas turbine."  This broad definition, which provides nothing more than a category of possible products, fails to give any of the named defendants "fair notice of what the . . . claim is and the grounds upon which it rests."  *See Twombly*, 550 U.S. at 555; *Celgard,* 2020 WL 7392909, *3; *Artrip*, 735 F. App'x at 715; *Estech,* 2020 WL 6324321, at *2; *Cross v. Dick's Sporting Goods, Inc.,* 2022 WL 138038, *2 (N.D. Ind. Jan. 14, 2022) (holding that the Federal Circuit's decision in *Bot M8* "[a]t the very least . . . indicates that an infringement claim must specifically identify the products accused of infringing").

LPP only references specific products in the background section of its Complaint.  *See, e.g.,* Compl., ¶¶ 14-16.  At least for the gas turbines identified in Austin and Odessa, LPP cannot plausibly allege infringement since those sales occurred—in some cases years—***before the asserted patents were filed***.  Further, as the court observed in *Fifth Marker*, a reference to a product in the fact section of a complaint "does not make it clear to the court whether [the patentee] avers that this product infringes one, both, or neither of the patents in suit," "fails to provide the [] defendants with fair notice of the claims," and warrants dismissal.  2009 WL 5966836, at *1.

Again, rather than identify a specific product, LPP merely uses GE's '821 patent to allege infringement of six claims across the three asserted patents.  *See* Compl., Exs. L, N, and P.

Nowhere, however, does LPP identify any facts that make plausible a critical foundational issue—whether any of the defendants actually offers products that practice the GE patent.  LPP offers no facts that indicate any defendant marks a product with the '821 patent or in any way has provided LPP with a basis to assert that the invention disclosed in the '821 is being used.  In fact, the '821 patent is not used by any of the named defendants.  Rodts Decl. ¶ 17; Morimoto Decl. ¶ 9.  The absence of this critical information renders the entire basis of LPP's Complaint fatally flawed because "the existence of a patent is no guarantee of the existence of a corresponding product." *Demodulation, Inc. v. United States*, 126 Fed. Cl. 499, 507 (2016); *Superior Indus., L.L.C. v. Thor Glob. Enterprises Ltd.*, 2011 WL 601217, at *1-2 (D. Minn. Feb. 11, 2011) (dismissing claim where plaintiff supported its infringement allegations with only the defendant's pending patent application).  LPP's reliance on the '821 patent, without any evidence that the patent is actually used, is just as, if not more, objectionable as merely relying on marketing materials to assert infringement.  Indeed, in *Macom Tech. Solutions Holdings, Inc. v. Infineon Techs. AG,* 2017 WL 3449596 (C.D. Cal. June 5, 2017), the court found that the patentee's reliance on the defendant's marketing materials, which unlike GE's '821 patent did identify specific products, was not sufficient.

**B.    LPP's Allegations of Direct Infringement Based on the '821 Patent Are Inconsistent with the Claims of the Asserted Patents.**

Even if the defendants had provided a basis to assume the '821 patent was used, the claim charts LPP prepared based on the '821 patent fail to support a reasonable inference of infringement of any of the three asserted patents—instead demonstrating ***inconsistencies*** between the '821 patent and the asserted patents that independently warrant dismissal.

1.      **The '396 Patent.**

As explained above, each claim of the asserted '396 patent requires, *inter alia*, (1) "a diluent gas," (2) "the diluent gas is inert," and (3) the diluent gas is "present in an amount such that reaction of the fuel gas upstream of the combustion zone is suppressed."  *See* '396 patent claims 1 and 10.  Where the claim chart addresses the diluent gas, LPP cites to portions of GE's '821 patent that disclose injecting "alternative fuels (such as hydrogen, propane, butane, etc.)" with a natural gas fuel.  *See* Dkt. 1-12 at 4 (Compl., Ex. L).  Citing to column 3, lines 50-54 of the '821 patent, LPP provides a similar quote:  "a method and system for blending a desired amount of alternate gas into a primary natural gas fuel . . . the alternate gas may be an alternate gas fuel (such as hydrogen, ethane, butane, propane, LNG, etc.). . . ."  *Id.*  LPP then pivots to a press release regarding the Pennsylvania power plant and states that liquid ethane is "the claimed diluent gas." *Id.*  Later, when it addresses the '396 patent's requirement that the diluent gas be ***inert,*** LPP provides a series of block quotes from the '821 patent, all of which describe introducing a "secondary gas ***fuel***" into the natural gas.  *Id.*  By pleading that the inert diluent gas is a fuel, and identifying ethane as the inert diluent, LPP has, just like the patentee in *Bot M8*, alleged facts that are inconsistent with and contradict infringement; LPP has pleaded itself out of court.  *Bot M8*, 4 F.4th at 1354; *Vervain v. Micron Techs., Inc.*, 2022 WL 23469, at *2 (W.D. Tex. Jan. 3, 2022). Nowhere in the '821 patent, or elsewhere, does LPP identify an inert gas—just the opposite.  LPP has failed to plausibly allege infringement of the diluent gas limitations.

The diluent gas limitations are clearly material to the patent.  The alleged invention purports to teach use of an "inert" "diluent gas" to solve a problem known as "auto-ignition," which the '396 patent explains "is the spontaneous ignition of the fuel prior to the desired flame location in the combustion device," resulting in "decreased efficiency and damage to the combustion device."  *See* Dkt. 1-11 ('396 patent), 1:65-2:7.  The importance of the inert diluent

gas was stressed during prosecution.  In response to the examiner's rejection of the claims, the applicants explained "the combustion device is configured such that autoignition . . . would occur if the vaporized fuel were to be premixed with the second gas containing oxygen ***without any diluent gas being present***."  Ex. C (Decl. of Betty Yang) at Ex. 1 (emphasis added).  The applicants, moreover, agreed with the examiner that "suppressing auto-ignition is not accomplished by the premixing zone." *Id.*  Instead, the applicants explained that "the combustion device is configured such that autoignition would occur in the absence of the diluent gas." *Id.*  In other words, the diluent gas, which the claim requires be "inert," achieves the alleged invention's objective of suppressing auto-ignition.  The materiality of this claim element demands a higher level of detail.  *See, e.g., Vervain*, 2022 WL 23469, at *5-6 (finding patentee failed to plausibly allege infringement for material claim element).  Here, LPP has mapped the diluent gas limitations not to inert gas, but expressly to reactive fuels.  Thus, taking LPP's factual allegations as true, *i.e.*, GE's '821 patent teaches mixing two reactive gases, does not lead to a reasonable inference that whatever unnamed product LPP purports to accuse infringes.  Dismissal of the '396 patent is thus appropriate.

### 2.    The '924 and '080 Patents.

As explained above, the alleged inventions claimed in the '924 and '080 patents pertain to monitoring the combustion or fuel characteristics and, based on that monitoring, determining whether the characteristics are above or below an acceptable range.  All claims of both patents require "an additive feed, where the additive feed is triggered by the monitoring," and "wherein the additive includes a combustion enhancer or a combustion retardant depending on whether the sensed combustion characteristic is above or below the acceptable range." *See, e.g.,* Dkt. 1-13 ('924 patent) at claim 1.  The patents repeatedly explain that in order to adjust combustor performance, when flame speed is too slow ***and*** when flame speed is too fast, a combustion

enhancer ***and*** a combustion retardant must be available.  *See, e.g., id.* at 1:46-2:62.  LPP treats this material limitation in much the same way it treats the inert diluent gas limitation of the '396 patent. LPP merely refers to a series of excerpts from GE's '821 patent, all of which describe blending a primary gas fuel with a secondary gas fuel.  *See* Dkt. 1-14 at 9-10 (Compl., Ex. N); Dkt. 1-16 at 8-10 (Compl., Ex. P).  Nowhere does LPP identify the claimed combustion enhancer or the claimed combustion retardant.  LPP, instead, simply shows that the '821 patent uses a blend of two fuels. In doing so, LPP ignores completely the requirements of the claims and thus has failed to sufficiently plead alleged infringement of both the '924 patent and the '080 patent.

**C.     LPP's Allegations of Indirect Infringement Fail Because Its Direct Infringement Claims Fail.**

In addition to alleging direct infringement, LPP also alleges that the defendants "knowingly and intentionally" induce infringement and contributorily infringe each of the asserted patents. *See* Compl., ¶¶ 21, 22, 29, 30, 37, and 38.  But having failed to plead a plausible claim of direct infringement, LPP has likewise failed to plausibly plead a claim of indirect infringement.  "There can be no inducement or contributory infringement without an underlying act of direct infringement." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d, 1311, 1326 (Fed. Cir. 2004); *see also CPC Patent Techs. Pty Ltd. v. Apple Inc.*, 2022 WL 118955, *3 (W.D. Tex. Jan. 12, 2022) (dismissing claim for indirect infringement because claim for direct infringement was deficient).

Induced and contributory infringement require that the alleged infringer have both knowledge of the asserted patent and knowledge of the infringement, and that defendant's products have no substantial non-infringing uses.  *Cross Med. Prods. Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011); *Commill USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).  In other words, for allegations of induced infringement to survive a motion to dismiss, the complaint must

plead facts plausibly showing that the accused infringer knew of the asserted patent, specifically intended another party to infringe, and knew the other party's acts constituted infringement. *See, e.g., Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376-77 (Fed. Cir. 2017).

LPP's allegations of indirect infringement fall far short of these requirements. First, LPP fails to plead facts that support its allegation that the defendants knew of each of the asserted patents. LPP merely asserts that "Defendant has extensive knowledge of Plaintiff's patent portfolio, having entered into three separate confidentiality agreements and collaborated on numerous plans to implement Plaintiff's patented technology." *See, e.g.,* Compl., ¶ 21. LPP does not identify who entered into these alleged agreements, nor does it provide the alleged agreements. Second, with respect to its allegations of induced infringement, LPP merely provides conclusory, boilerplate allegations that the defendants actively encouraged and instructed customers to use the unnamed "Accused System" in ways that directly infringe. *Id.* Having failed to identify any actual system, LPP leaves the defendants to guess at what instructions and encouragement they may have provided. In short, the allegation fails to provide the requisite notice. And third, with respect to its contributory infringement allegations, again, by failing to identify a specific component that contributes to infringement, LPP's allegations are nothing more than conclusory and must be dismissed. *See, e.g., Iron Oak Techs., LLC v. Dell, Inc.*, 2018 WL 1631396, *2 (W.D. Tex. Apr. 4, 2018) (dismissing plaintiff's contributory infringement allegations because the complaint did "not identify the component, material, or apparatus that allegedly contributes to the direct infringement").

**D.    Venue Is Improper for All Defendants in This District under 28 U.S.C. § 1406(a).**

LPP has the burden to show that venue is proper for ***all*** defendants. *ZTE*, 890 F.3d at 1014; *AGIS*, 2018 WL 4854023, at *4. As noted, LPP does not allege that any defendant is incorporated in Texas. Compl., ¶¶ 2-4. Thus, venue is only proper if LPP can show that (1) ***each*** defendant

committed acts of infringement in this District, and (2) *each* defendant maintains a regular and established place of business in the District.  Rather than meet this burden, LPP treats all of the defendants as *one* defendant, asserting that "***Defendant*** is registered to do business in Texas, and upon information and belief ***Defendant*** has transacted business in this District . . . [and] ***Defendant*** has regular and established places of business in this District, including at 400 W 15th St., Austin, TX 78701."  Compl., ¶ 7 (emphases added).  LPP has failed to satisfy its burden on venue, and dismissal is required.

### 1.    LPP's Infringement Allegations Cannot Establish that Any Defendant Has Committed an Act of Infringement in This District.

In conclusory fashion, LPP alleges its amalgamated definition of "Defendant" committed acts of direct and indirect infringement in this District.  Compl., ¶ 7. But as discussed above, the Complaint does not allege any facts that plausibly demonstrate that any defendant has done anything in this District that could be characterized as an act of infringement: the Complaint identifies no sale, offer for sale, manufacture or use in this District of any specifically identified device or system.  And as noted, to the extent LPP has identified gas turbines in this District, the sales of those turbines, which took place well before the filing of the asserted patents and cannot serve as a basis for infringement and therefore venue.  *See, e.g., Sudenga Indus., Inc. v. Global Indus., Inc.*, 2018 WL 9811114, at *3 (N.D. Iowa Sept. 14, 2018) (finding that although an infringing act need not be established on the merits for venue, plaintiff did not establish venue where it failed to plausibly allege infringement); *see also AGIS*, 2018 WL 4854023, at *4 (E.D. Tex. Sept. 28, 2018) (holding that a plaintiff must "properly support" venue allegations).

### 2.    LPP Has Not Shown that Any Defendant Maintains a Regular and Established Place of Business in This District.

As to GE and GE Power, LPP also fails to plead the second element of venue—that each defendant maintains a regular and established place of business in this district.  "To show that a

defendant has a regular and established place of business, there are three requirements: '(1) there must be a physical place in the district; (2) it must be a regular and established place of business, and (3) it must be the place of the defendant.'"  *Celgene Corp. v. Mylan Pharm. Inc.,* 17 F.4th 1111, 1122 (Fed. Cir. 2021), quoting *Cray*, 871 F.3d at 1360.  A plaintiff must prove all three requirements to establish venue.  *GreatGigz Solutions, LLC v. ZipRecruiter, Inc.*, 2022 WL 432558, at *2 (W.D. Tex. Feb. 11, 2022).  LPP cannot satisfy any of these elements for either GE or GE Power.

> ### a.    Neither GE nor GE Power Has a Physical and Regular and Established Place of Business Within This District.

First, neither GE nor GE Power  an office or other established place of business in this District—nor does the Complaint even plead the existence of such a place of business for either of these two entities.  Rodts Decl. ¶¶ 2-3.  LPP pleads only that GE Digital—a corporate entity separate from GE and GE Power—maintained an office in Austin (identified with the wrong address in the Complaint), and asserts no basis for the Austin address of GE Digital to be imputed to either of the other two named defendants.  *See Andra Group, LP v. Victoria's Secret Stores, L.L.C.,* 6 F.4th 1283, 1289 (Fed. Cir. 2021).  At bottom, LPP must establish proper venue for ***all*** defendants.  *ZTE*, 890 F.3d at 1014; *AGIS*, 2018 WL 4854023, at *4.  LPP fails at the gate for GE and GE Power because neither of these entities even has a regular and established place of business in this District.  For this reason, dismissal is doubly proper for GE and GE Power.

> ### b.    GE Employees Who Reside in the District Do Not Establish Venue.

Under *Cray*'s ratification analysis, some courts have evaluated whether the presence of employees working from home offices can establish a regular and established place of business of the defendant.  However, merely having "a physical location where an employee of the defendant carries on certain work for his employer" is not sufficient.  *Cray*, 871 F.3d at 1366.  Rather, as the

Federal Circuit noted in *Cray*: "[The regular and established place of business] must be a *place of the defendant*, not solely a place of the defendant's employee. Employees change jobs. Thus, the defendant must establish or ratify the place of business. It is not enough that the employee does so on his or her own." *Id.* at 1363 (emphasis in original); *see also Celgene*, 17 F.4th at 1122.

> Based on *Cray,* this Court recently explained:

> [T]o determine whether the place is "of the defendant" and not solely the place of the defendant's employee, courts consider: (1) whether the defendant owns or leases the place; (2) whether the defendant exercises other attributes of possession or control over the place; (3) whether the defendant conditioned the employee's employment on continued residence in the district; and (4) whether the home was used to store, distribute, or sell the defendant's goods. [*Cray*, 871 F.3d] at 1363. Courts will also consider a defendant's own representations, including: (1) whether marketing and advertisements hold the homes out as a place for business; (2) whether the defendant lists the home on its website or in a telephone directory; and (3) whether the defendant's name is on a sign associated with the building. *See id.* at 1363–64. However, the "mere fact that a defendant has advertised that it has a place of business or set up an office is not sufficient" on its own. *Id.* Rather, the defendant must "actually engage in business from that location." *Id.*

*GreatGigz Solutions*, 2022 WL 432558, *5. Using these factors, this Court found that the plaintiff in *GreatGigz* failed to establish that the homes of the defendant's employees satisfied the "regular and established place of business" requirement for venue. *See Gesture Tech. Partners, LLC v. Lenovo Group Ltd.*, 2021 WL 6205789, at *2 (W.D. Tex. Dec. 29, 2021) (at least twelve employees working from home did not establish venue, even where home offices were reimbursed, because "reimbursement policy was not conditioned on the employees living in the District"); *Correct Transmission LLC v. ADTRAN, Inc.*, 2021 WL 1967985, at *4 (W.D. Tex. May 17, 2021) ("all [the five employees in the District] work from their homes of their own accord"); *Uniloc USA, Inc. v. Nutanix, Inc.*, 2017 WL 11527109, at *3 (E.D. Tex. Dec. 6, 2017) (nineteen employees who worked from home insufficient to establish venue); *CUPP Cybersecurity LLC v. Symantec Corp.*, 2019 WL 1070869, at *4 (N.D. Tex. Jan. 16, 2019) (149 employees).

As a non-operational entity, GE Power has no employees.  And, although business divisions of defendant GE have employees who live in the District and work out of their homes, those employees have not created "regular and established places of business" of each (or any) defendant.  Indeed, out of GE's thousands of employees and numerous business divisions, nine (9) persons whose work pertains to GE Corporate reside in the District, and ten (10) persons whose work pertains to the Gas Power division reside in the District.  Rodts Decl. ¶ 9.  Each of these employees work from their homes.  *Id.* ¶ 10.  The homes are not held out, in marketing or other materials, as a designated place of business of any defendant; as such, the employees do not use their personal addresses on materials of any defendant.  *Id.* ¶ 11.  Consistent with this, company policy forbids the employees from using their personal homes for any in-person business meetings.  *Id.* ¶ 12.  No defendant, moreover, owns or leases the employees' homes, or pays for or reimburses the employees for any portion of their mortgage or rent or exercises any control over the home.  *Id.* ¶ 11.  No employee stores, distributes, or sells products for customers from their homes.  *Id.* ¶ 12.  Though some employees may keep product materials in their homes for their own use, those materials are not offered for sale to customers.  *Id*.  None of the employees is required to work from or live within the District; rather, the employees live and work from where they choose.  *Id.* ¶ 10.  In sum, the employees' personal addresses are not publicly known as those of a defendant.

At bottom, these personal residences within the Western District are merely places where the employees carry on work.  This is insufficient to establish that any defendant has a regular and established place of business within this District.  *See Cray*, 871 F.3d at 1366.  Accordingly, venue as to each defendant is improper and dismissal is required.

## V.      CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the motion and dismiss this case in its entirety.

Dated:  March 3, 2022    By:  */s/ Mark N. Reiter*
                                                        Mark N. Reiter
                                                         Texas State Bar No. 16759900
                                                         mreiter@gibsondunn.com
                                                         **GIBSON, DUNN & CRUTCHER LLP**
                                                         2001 Ross Ave Suite 2100
                                                         Dallas, TX  75201-6912
                                                         Telephone:  214.698.3360
                                                         Facsimile:  214.571.2907

                                                         ATTORNEYS FOR DEFENDANTS
                                                         GENERAL ELECTRIC COMPANY, GE
                                                         DIGITAL LLC, AND GE GAS POWER LLC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2022, the foregoing was electronically filed in compliance with Local Rule CV-5(b)(1) and served via the Court's electronic filing system on all counsel who have consented to electronic service on this 3rd day of March, 2022.

*/s/ Mark N. Reiter*
Mark N. Reiter