IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| LPP COMBUSTION, LLC, | |
| Plaintiff, | |
| v. | Case No.  6:21-cv-1343-ADA |
| GENERAL ELECTRIC COMPANY, GE DIGITAL, and GE GAS POWER | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

## I.     INTRODUCTION

GE filed a Motion to Dismiss LPP's First Amended Complaint ("FAC") pursuant to 12(b)(6) for failure to state a claim and 12(b)(3) for improper venue. The parties agreed to bifurcate briefing. Dkt. 21 (Plaintiff's Notice of Intent to Proceed with Venue Discovery) at 2. Accordingly, LPP hereby responds to the Rule 12(b)(6) components of GE's motion in accordance with this Court's Local Rules.

On the pleadings, GE asks this Court to weigh in on a key claim construction dispute and to rule that GE's Accused System does not infringe the asserted claims when construed in a manner that favors GE. But GE does not propose a specific construction of the disputed "inert" diluent gas. It does not cite intrinsic or extrinsic support for how the disputed language should be construed. And it refuses to engage an express discussion from the European prosecution of a related patent in which the meaning of the disputed language was discussed in extensive detail in a manner contrary to GE's interpretation. Instead, GE urges the Court to go with its gut and find that GE could never infringe as a "matter of common understanding." The Court should decline GE's offer. Not only does GE's interpretation of the claim language conflict with even the limited record on the pleadings, a full record at *Markman* will reveal that GE's interpretation conflicts with both the intrinsic record and basic combustion science.

GE also argues that the Court should dismiss LPP's claims alleging that GE does not understand specifically *how* the Accused System infringes. As set forth in its FAC, LPP has alleged every public detail regarding the Accused System, satisfying its 12(b)(6) obligation. GE fails to provide any authority for its argument that LPP is obligated to support its pleadings with details outside the public purview. Tellingly, GE does not come forward with public information showing that LPP's understanding and description of the Accused System is incorrect.

Governing precedent is clear that (1) claim construction is not properly resolved on the pleadings and (2) an infringer cannot avoid liability by infringing in secret. Accordingly, GE's motion to dismiss pursuant to Rule 12(b)(6) should be denied.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To meet this requirement, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; put another way, the plaintiff must do more than plead facts "'merely consistent with' a defendant's liability." *Id*. (quoting *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955). When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Id*.

## III.    OVERVIEW OF THE TECHNOLOGY

Each of the Asserted Patents relate to combusting fuel. To simplify the discussion, LPP describes the patented technologies in the context of turbines designed to combust lean, premixed natural gas.[1] As explained by the '396 Patent, in this type of turbine, "natural gas is premixed with [oxygen-rich] combustion air prior to arrival at the flame front" in the combustor, which "burns at a lower temperature than conventional diffusion flame combustors, thereby producing lower levels of pollutants." Dkt. 22-12 (Ex. K – '396 Patent), 1:30-38. This process is depicted below:

---

[1] Although not limited to natural gas turbines, the Asserted Patents all treat lean, premixed natural gas turbines as exemplary. Further, the Accused System employs these same natural gas turbines.



The '396 Patent proposes a solution to enable combusting alternative fuel gases (e.g., higher hydrocarbon fuels such as ethane ($C_2H_6$)) in turbines designed to burn lean, premixed natural gas. Dkt. 22-12 (Ex. K – '396 Patent) at 1:30-53. Prior attempts to burn such alternative fuels in lean, premixed natural gas turbines failed due to a phenomenon known as auto-ignition. *Id.* at 1:53-2:7. Namely, higher hydrocarbon fuels such as ethane, when vaporized into air from their liquid fuel state—the then-standard process for using liquid fuels in gas turbines—would spontaneously ignite prior to the turbine's combustion chamber, decreasing efficiency and even causing physical damage to the turbine. *Id.* Put simply, vaporizing ethane into oxygen-rich air creates a more easily ignitable gas than natural gas. This more easily ignitable gas exceeds the designed limits of the natural gas turbine and combusts prematurely. To avoid the auto-ignition problem, the '396 Patent proposes *diluting* the alternative fuel by vaporizing it into a reduced oxygen gas stream (referred to in the claims as a "diluent gas") such that the resulting fuel gas remains within the designed limits of the turbine, preventing auto-ignition. *Id.* at 2:53-3:13. This solution is depicted in Fig. 1(a) below:



*Id.* at Fig. 1(a) (annotated). As depicted, a liquid fuel such as ethane (blue) is vaporized into a "reduced oxygen gas stream" (red) such that the resulting mixture (purple) remains within the turbine's designed limits and avoids igniting prematurely. As with the standard lean, premixed natural gas turbine, an oxygen-rich gas stream is introduced in the combustor prior to the flame front to render the resulting mixture (purple) combustible. The '396 Patent claims all capture this process. Each requires producing a "fuel gas" (purple) using a "liquid fuel" (blue) and a "diluent gas" (red) and exposing this resulting mixture to a "second gas containing oxygen" upstream of the combustion zone. *Id.* at Claim 1.

The '396 Patent emphasizes the importance of low oxygen content in the diluent gas and explains that the goal is to ensure the oxygen remains low enough in the "diluent gas" to prevent combustion:

> **The reduced oxygen gas stream source 2 produces a gas stream with an oxygen content that is reduced relative to ambient air,** which is commonly taken as containing approximately 21% $O_2$. In some embodiments of the invention, the reduced oxygen gas stream has an oxygen content below the limiting oxygen index. The limiting oxygen index (LOI) is the concentration of oxygen in the local

environment below which a material will not support combustion and varies for different types of liquid fuels. The LOI is typically between about 10% and about 14% and is approximately 13% for many higher hydrocarbon fuels. **The more the oxygen content of the gas stream from the source 2 is reduced, the more auto-ignition is suppressed**.

*Id*. at 6:8-20 (emphases added). The '396 Patent contemplates many options for reduced oxygen content gasses that qualify as diluent gasses in the described invention. In one example, the patent expressly contemplates a diluent gas with such low oxygen content that it is considered "inert" from a combustion perspective. In other example, the reduced oxygen diluent gas diluent gases that contain hydrocarbons such as methane—the primary component in natural gas. *Id*. at 6:27-31.

The '080 Patent and '924 Patent are directed toward the same general technology, but focus on different aspects. Namely, each describes and claims a supporting process that monitors fuel properties—either the fuel characteristics or characteristics of the fuel's combustion—and makes adjustments to ensure the fuel remains within the turbine's specifications. To make such adjustments, the patents contemplate adding a combustion enhancer or a combustion retardant to the primary fuel feed. *See* Dkt. 22-15 (Ex. O – '080 Patent); Dkt. 22-13 (Ex. M – '924 Patent).

## IV.   ARGUMENT

### A. GE's Primary Arguments Turn on Claim Construction and Non-Infringement—Issues That Should Not be Resolved on the Pleadings

GE asks this Court to dismiss the FAC's '396 Patent allegations on the basis that natural gas can never be the claimed "inert" diluent gas. Dkt. 24 (Renewed Motion to Dismiss) at 11-13. In support, GE simply asserts as fact that "[i]t is 'a matter of common understanding' that natural gas is not inert 'under any reasonable construction of the relevant terms.'" *Id*. at 13. GE is wrong. Properly construed, the claimed inert diluent gas need not be of a chemical makeup that is inert in *all* contexts, as GE implies. Instead, it must be inert from a combustion reaction perspective, i.e., it must be a gas of sufficiently low oxygen content that it will not combust. GE is similarly wrong

about the alleged "common understanding" that natural gas can never be "inert." The process of "inerting" a combustible gas by decreasing its oxygen content is well understood in the combustion sciences, and natural gas delivered to power plants (such as those that implement the Accused System) is generally guaranteed by contract to have an oxygen content well below the point at which the gas is considered inert from a combustion perspective. This is both a function of the low oxygen content of natural gas as it is extracted and the safety concerns that would arise from transporting highly combustible gas in pipelines. As discussed in the technology overview above, the subject turbines insert high oxygen content gas before the flame front to convert the inert natural gas (as delivered) into a combustible gas.

These are inescapably fact-intensive inquiries. To resolve the proper construction of "inert" and to determine whether the natural gas delivered to GE's Accused System satisfies the proper construction will require a fully developed record that sets forth the relevant intrinsic evidence from the '396 Patent, extrinsic evidence in the art, discovery into the Accused System, and potentially expert testimony on both questions. None of that evidence is available to the Court today, which is why courts, including in this district, consistently decline such invitations to address claim construction and infringement arguments at this preliminary stage. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349-50 (Fed. Cir. 2018) (finding the district court dismissal was reversible error and stressing that "objections to [a plaintiff's] proposed claim construction [is] a dispute not suitable for resolution on a motion to dismiss"); *Unification Techs. LLC v. Dell Techs., Inc.*, No. 6:20-CV-00499-ADA, 2021 WL 1343188, at *3 (W.D. Tex. Jan. 28, 2021) ("As UTL correctly asserts, a 12(b)(6) motion is not the appropriate procedure for identifying inconsistent direct infringement contentions. Those are premature assertions that are best addressed in claim construction or non-infringement positions."). Court's also decline to rule on

claim construction at the 12(b)(6) stage based on local rules. *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 890 (N.D. Cal. 2011); *see also Pfizer Inc. v. Apotex Inc.*, 726 F.Supp.2d 921, 938 (N.D.Ill.2010) (denying dismissal of the defendant's counterclaims for failure to satisfy Rule 8(a) because doing so would undermine the court's local patent rules, which require more detailed disclosures at a later stage). This District's Local Rules establish the proper procedure for claim construction proceedings. Thus, addressing claim construction at this early stage undermines the local patent rules carefully set forth by this district.

GE's motion seeks a final ruling in this case before discovery has even begun. But it is black letter law that a plaintiff need not "prove its case at the pleading stage." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (citing *Skinner*, 562 U.S. at 529–30, 131 S.Ct. 1289). The complaint must place the "potential infringer ... on notice of what activity ... is being accused of infringement." *K–Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013). LPP's FAC clearly exceeds the minimum requirements under Rule 12(b)(6), especially as "the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Bill of Lading*, 681 F.3d at 1335.

Dismissal is particularly inappropriate here, where GE asks the Court to ignore the intrinsic record and dismiss a case based on the gut reaction that natural gas cannot be an "inert" diluent gas. As explained below, this proposed conclusion conflicts with even the limited pleading record before the Court.

### 1) The record disputes GE's interpretation of "inert"

As explained in the FAC, the meaning of the term "inert" was directly addressed during the prosecution of a related European patent. Dkt. 22 (FAC) at ¶ 19. Specifically, during

prosecution of this related patent, the applicant explained: "[i]t should also be understood that "inert" is context-sensitive and is understood to be so by the person skilled in the art." Dkt. 22-17 (Ex. Q – European Prosecution History) at 3. The applicant elaborated that, "[a]s a matter of common understanding, ambient air is inert with respect to some substances (e.g., diamond) but not others (e.g., hydrocarbon fuels)." *Id*. This is wholly consistent with the '396 Patent's emphasis on the oxygen content as the primary consideration for an effective diluent gas. As set forth in the Technology Overview above, the '396 Patent sought to solve the then-existing problem that vaporizing higher hydrocarbon fuels such as ethane into air caused the resulting gas to spontaneously ignite prior to the turbine's combustion chamber. This is because ambient air in that context has a sufficiently high oxygen content that it facilitates ethane combustion. Accordingly, despite the fact that ambient air is "inert" with respect to certain materials (e.g., diamonds), it is very much *not* inert from a combustion perspective when used to vaporize higher hydrocarbons such as ethane in a turbine environment.

In its renewed motion, GE briefly acknowledges LPP's allegations related to the European prosecution, but erroneously concludes (without support from record evidence) that "[n]atural gas cannot simultaneously be both" an inert gas and a fuel that combusts. Dkt. 24 (Renewed Motion to Dismiss) at 13. This misunderstanding of both the claims and of basic combustion science permeates GE's motion. As a fully developed litigation record will reveal, natural gas delivered to power plants contains a very low oxygen content—so low that the delivered natural gas is considered inert from a combustion perspective. As explained by the '396 Patent and depicted below, in the type of natural gas turbines at issue here, "natural gas is premixed with [oxygen-rich] combustion air prior to arrival at the flame front" in the combustor." Dkt. 22-12 (Ex. K – '396 Patent), 1:30-38.



Accordingly, although natural gas is inert as delivered to the power plant, it becomes combustible when oxygen is added in the combustor. Thus, contrary to GE's baseless assertions, natural gas is in fact both an inert gas when delivered to the power plant and also a fuel that combusts (when mixed with oxygen-rich combustion air).

> ### 2)  GE does not dispute that natural gas in the accused system embodies the claimed attributes of an inert diluent gas

As GE correctly notes in its renewed motion, the '396 Patent claims impose certain functional requirements on the claimed inert diluent gas. Dkt. 24 (Renewed Motion to Dismiss) at 12-13. Namely, the claimed gas prevents auto-ignition "that would occur if the vaporized fuel were to be premixed with the second gas containing oxygen without any diluent gas being present." *Id.* at 12. In the context of the instant allegations, this means that natural gas in the Accused System prevents auto-ignition that would have occurred were ethane vaporized directly into air (i.e., into a high oxygen content gas).

LPP alleges that GE's system vaporizes ethane into a natural gas stream at a rate of up to 25% ethane upstream of the combustion zone. Dkt. 22 (FAC) at ¶ 19. Based on their relative properties, vaporizing ethane into the natural gas stream prevents a reaction (e.g., auto-ignition) upstream of the combustion zone that would have occurred were ethane vaporized into air. *Id.* GE

does not deny that, were the Accused System to vaporize ethane into air, auto-ignition would occur. Indeed, this is the precise problem identified in the '396 Patent, which the patented technology sought to solve. Nor does GE deny that vaporizing ethane into natural gas in the Accused System prevents auto-ignition. Finally, GE does not deny that the reason auto-ignition is avoided in the Accused System relates directly to the low oxygen content of its natural gas.

Because GE does not dispute that natural gas in the Accused System satisfies the requirements of the claimed inert diluent gas, this Court should reject GE's argument that the FAC fails to plausibly allege infringement.

### 3)  *LPP's infringement allegations are not inconsistent*

Although GE's primary argument turns on the "inert" language in the '396 Patent claims, it also challenges LPP's allegations directed to the '924 and '080 Patents. Namely, GE argues that mapping natural gas as a "fuel" for the '080 and '924 Patents is inconsistent with mapping natural gas as an "inert" diluent gas for the '396 Patent. Dkt. 24 (Renewed Motion to Dismiss) at 13-14. According to GE, this alleged inconsistency warrants dismissing LPP's infringement allegations with respect to each of the Asserted Patents. *Id*. GE's argument fails for several reasons.

First, GE's arguments turn entirely on alleged inconsistencies. GE does not provide the Court any independent justification for dismissing the allegations directed to the '080 and '924 Patents. Indeed, even if the Court were to accept GE's arguments that natural gas can never satisfy the inert diluent gas limitations in the '396 Patent claims, GE provides no independent reason that natural gas cannot be the claimed "gaseous fuel" in the '080 and '924 Patent claims. Even accepting GE's argument that there are inconsistent theories across the distinct patents—there are not—GE cites no authority supporting the proposition that such inconsistencies merit complete dismissal. In GE's first cited case, *Smith v. Medtronic*, the court dismissed a complaint filed by a

plaintiff for a products liability claim where the plaintiff failed to specify which section of the statute governed her claim. *Smith v. Medtronic*, *Inc.*, No. CIV.A. 13-451, 2014 WL 2547813, at *6 (W.D. La. June 4, 2014). And GE's second cited case, *De La Vega v. Microsoft,* related to a case where the plaintiff failed to plead facts supporting a joint infringement claim. *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 11, 2020). Neither even remotely support GE's argument that inconsistent allegations across distinct patents merit full dismissal.

Second, as discussed above, a fully developed litigation record will reveal that natural gas is delivered to power plants with a very low oxygen content—so low that the delivered natural gas is considered "inert" from a combustion perspective. As explained by the '396 Patent and depicted below, in the type of natural gas turbines at issue here, "natural gas is premixed with [oxygen-rich] combustion air prior to arrival at the flame front" in the combustor." Dkt. 22-12 (Ex. K – '396 Patent), 1:30-38.



Accordingly, although natural gas is inert as delivered to the power plant, it becomes combustible when oxygen is added in the combustor. Thus, contrary to GE's arguments, natural gas is in fact both an inert gas when delivered to the power plant and also a fuel that combusts (when mixed with oxygen-rich combustion air).

Finally, contrary to GE's argument, LPP does in fact map natural gas as a fuel in its allegations for all three patents. As GE notes, LPP alleges that natural gas satisfies the claimed "gaseous fuel" in the '924 and '080 Patent claims. But LPP also maps natural gas as a constituent component of the claimed "fuel gas" in the '396 Patent claims. Namely, the '396 Patent claims recite "**producing a fuel gas using** a liquid fuel comprising hydrocarbon molecules and **a diluent gas**." Dkt. 22-11 (Ex. K – '396 Patent) at Claim 1 (emphasis added). Accordingly, by mapping natural gas to the claimed "diluent gas" in its '396 Patent allegations, LPP has consistently alleged that natural gas is a component of fuel gas across all three asserted patents.

### B.  GE Has Notice of the Accused System and How the Accused System Infringes

In its original 12(b)(6) motion, GE argued that LPP had failed to provide adequate notice of an accused product. Dkt. 18 (Motion to Dismiss) at 11-12. In response, LPP filed its FAC, which cites every relevant public detail relating to GE's system, as well as the parties' past dealings that inform LPP's allegations. In its renewed Motion to Dismiss, GE no longer disputes that LPP has adequately identified an accused system. GE now argues that LPP has failed to adequately explain *how specifically* the Accused System operates with respect to the Asserted Patents. Dkt. 24 (Renewed Motion to Dismiss) at 10-11 (conceding that LPP has identified the accused product, but arguing LPP "fails to identify any facts that plausibly support an inference that the [accused product] does infringe").

LPP's allegations turn on three key sets of operative facts, which are detailed in the FAC. Dkt. 22 (FAC) at ¶¶ 11-14. First, the parties collaborated extensively to implement the patented technology, including drafting business plans for a system designed to mix 25% ethanol with 75% natural gas to be combusted in a natural gas turbine. Throughout this process, the collaborating

participants knew this solution implicated LPP's patents.[2] Second, GE publicly announced that it sold a nearly identical solution (in Fairview, PA) that mixes 25% ethane with 75% natural gas. Third, shortly after learning of LPP's technology and patent filings, GE filed its own patent application directed to "blending a desired amount of alternate gas into a primary natural gas fuel for a DLN combustion gas turbine," which expressly teaches that "[t]he alternate gas may be . . . ethane[.]" Ex. A, U.S. Patent No. 7,895,821 ("the '821 Patent"). Given the precise overlap, LPP has alleged, on information and belief, in its FAC that certain features described in the '821 Patent have been implemented in GE's infringing system.

GE does not deny that the parties collaborated as alleged. It does not deny that it installed the ethane/natural gas mixing technology in Fairview, PA as alleged. Nor does it deny that the '821 Patent features cited in LPP's pleadings have in fact been implemented in the Accused System. GE's arguments turn instead on (1) carefully crafted statements about its use of the '821 Patent, (2) mischaracterizing LPP's allegations, and (3) demands for more detail that are unsupported by law. Dkt. 24 (Renewed Motion to Dismiss) at 10-11.

> 1)  *GE does not deny that it uses the '821 Patent features cited in LPP's pleadings*

The FAC alleges, "on information and belief, Defendant's Accused System includes certain features that are described in the '821 Patent." Dkt. 22 (FAC) at 28; *see also* Dkt. 22-12 ('396 Patent claim chart) (similar statement re '821 Patent), Dkt. 22-14 ('924 Patent claim chart) (same), Dkt. 22-16 ('080 Patent claim chart) (same). The FAC continues, "[f]or an avoidance of

---

[2] GE incorrectly asserts that the parties "had a brief history" that ended more than a decade ago. D.I. 24 (Renewed Motion to Dismiss) at 1. In fact, since the 2012 collaboration referenced in the FAC, the parties have had repeated and substantive contacts, including extensive communications in 2016 and 2017 regarding GE's engineering review of LPP's proposal to combust ethane at the Marcus Hook energy plant in Pennsylvania. In fact, as recently as 2020-2021, LPP and a Houston-based GE entity have been collaborating on technical issues related to high pressure liquified petroleum gas blends. It should be noted that a number of these substantive contacts over the last decade were initiated by GE.

doubt, LPP's allegations do not depend on the Accused System practicing the claims of the '821 Patent." *Id*.

GE does not deny that the Accused System implements the specific '821 Patent features and functionalities identifies in LPP's FAC and associated claim charts. Instead, GE makes two assertions, neither of which addresses LPP's actual allegations. First, GE claims "the '821 patent is not used by any of the named defendants (Rodts Decl., ¶ 17; Morimoto Decl., ¶ 9)." Dkt. 24 (Renewed Motion to Dismiss) at 10. GE does not elaborate as to what "is not used" means in this context. To the extent that language has any accepted meaning in patent law, it is that GE contends it does not practice the claims of the '821 Patent. Indeed, both declarants cited in support use the phrase "covered by the '821 Patent" (Dkt. 24-1 at ¶ 17, Dkt. 24-2 at ¶ 9)—a phrase that similarly connotes practicing the claims of a patent. The only relevant question is whether the Accused System uses specific features and functionalities *described in* the '821 Patent. On this point, GE is silent. Accordingly, GE's attempt to paint the '821 Patent as irrelevant to the instant case should be rejected.

Second, GE argues that "LPP identifies no connection between the '821 patent and the Fairview system, nor any instance of a defendant marking a product or marketing a product with the '821 patent." Dkt. 24 (Renewed Motion to Dismiss) at 10. Neither statement denies LPP's actual allegations with respect to the '821 Patent—that the Accused System uses the specific '821 Patent features and functionalities identified in the claim charts submitted with the FAC (Dkt. 22-12, Dkt. 22-, and Dkt. 22-16).

> 2) *LPP's allegations do not turn entirely on the '821 Patent, as GE incorrectly argues*

GE next argues that LPP "relies solely on GE's '821 patent to support its allegations" and points out that "the '821 patent contains no disclosure directed to the vaporization of a liquid fuel

(allegedly ethane)—an element of all of the asserted '396 patent claims—and what seems to be the foundation of LPP's complaint." Dkt. 24 (Renewed Motion to Dismiss) at 10-11. Not only is GE wrong on multiple discrete points, it's broader suggestion that LPP failed to allege a vaporizer in the Accused System is patently false.

First, GE is wrong that "all of the asserted '396 patent claims" recite a vaporizer. Only Claim 10 and its dependents recite a "fuel vaporization unit." Dkt. 22-12 ('396 Patent claim chart).

Second, and more importantly, GE is also wrong to state that LPP's allegations rely solely on GE's '821 Patent and to suggest that LPP has failed to support the allegation that GE vaporizes ethane in the Accused System. Indeed, LPP's '396 chart submitted with the FAC has repeated references to evidence other than the '821 Patent, and LPP has cited that additional evidence to allege that the Accused System does in fact vaporize ethane into natural gas. *See* Dkt. 22-12 ('396 Patent claim chart) at 4 (citing press release regarding the Fairview plant that explains "[a] GE vaporizer 'the size of a delivery truck' can turn liquid ethane from the pipeline into a gas that can be blended into natural gas to make a fuel mixture up to 25% ethane"), 10 (same), 14 (same).

### 3)  GE cannot escape liability by infringing in secret

It is well established that GE cannot insulate itself from liability by infringing in secret. *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013) (explaining that the inability to "point to the specific device or product" that performs a claimed feature "should not bar [the] filing of a complaint" "especially when the operation of those systems is not ascertainable without discovery"); *Raytheon Co. v. Cray, Inc.*, No. 216CV00423JRGRSP, 2017 WL 1362700, at *4 (E.D. Tex. Mar. 13, 2017), report and recommendation adopted, No. 216CV00423JRGRSP, 2017 WL 1344900 (E.D. Tex. Apr. 12, 2017) ("There is no reason to think that the Federal Circuit's view would be different under the *Iqbal/Twombly* standard given the

16

Court's primary concern: '**A defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible**.'") (emphasis added) (internal citations omitted). LPP's allegations incorporate every public detail about the Accused System, and GE does not suggest otherwise. Accordingly, LPP has satisfied the governing pleading standard, and GE cannot escape liability by keeping secret pertinent details of its infringement.

### C.  GE's Indirect Infringement Challenge Ignores the FAC

GE argues that LPP's indirect infringement allegations fall with its direct infringement allegations. Dkt. 24 (Renewed Motion to Dismiss) at 14-15. For all the reasons discussed above, LPP's direct infringement allegations are properly supported and should not be dismissed.

GE also retains what appears to be a holdover argument from its original motion to dismiss, briefly arguing that LPP failed to provide any detail supporting the allegation that GE knew of the asserted patents. *Id*. at 15. In response to this same argument set forth in GE's original motion to dismiss, LPP alleged details in its FAC regarding a meeting conducted over three days in June of 2012 that focused on implementing LPP's patented technology, including specifically blending ethanol into natural gas. Dkt. 22 (FAC) at 12. LPP even provided a full list of participants and the GE entity with which they were then affiliated. *Id*. GE's renewed motion does not respond to (or even acknowledge) these more detailed allegations. Accordingly, GE's indirect infringement arguments fail to address the actual record and should be rejected.

### V.    CONCLUSION

For the foregoing reasons, LPP respectfully requests that the court deny GE's Motion to Dismiss First Amended Complaint pursuant to 12(b)(6).

Dated:  April 15, 2022

Respectfully Submitted,

/s/ Melissa R. Smith
Melissa Richards Smith
**GILLAM AND SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Tel: (903) 934−8450
Fax: (903) 934−9257
Email: melissa@gillamsmithlaw.com

Paul R. Hart (CO Bar 45697)
Erise IP, P.A.
5299 DTC Blvd., Suite 1340
Greenwood Village, CO 80111
(913) 777-5600 telephone
(913) 777-5601 fax
Paul.Hart@eriseIP.com

Adam P. Seitz (KS Bar 21059)
Erise IP, P.A.
7015 College Blvd., Suite 700
Overland Park, KS 66211
(913) 777-5600 telephone
(913) 777-5601 fax
Adam.Seitz@eriseIP.com

ATTORNEYS FOR PLAINTIFF LPP
COMBUSTION, LCC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on this the 15th day of April, 2022 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(b).

/s/ Melissa R. Smith
Melissa R. Smith